## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRISTAN BURTON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  14-6776** |
| | : | |
| **NANCY A. BERRYHILL,[1] Acting** | : | |
| **Commissioner of** | : | |
| **Social Security** | : | |

### MEMORANDUM OPINION

**Savage, J.**                                                    **March 30, 2017**

Since Tristan Burton filed his application for Supplemental Security Income benefits thirteen years ago, there have been six hearings and three decisions by two different administrative law judges, and his case has been twice remanded to the Commissioner for expert testimony addressing his impairments relating to intellectual disability.[2]  Now, acknowledging the recent decision to deny benefits is not supported by substantial evidence, the Commissioner moves to remand a third time.

As the Commissioner concedes, the last ALJ decision is indefensible.  After thirteen years, it is time for a decision.  Thus, we shall deny the Commissioner's motion to remand for more testimony and instead decide the case on the existing record.

### Factual and Procedural Background

This is the third time this case has been before us for review.  In 2004, Burton, then ten years of age, applied for Supplemental Security Income benefits.  In 2008, after

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] The term "intellectual disability" is used rather than the more outdated term "mental retardation," which is the term used throughout much of the record.  *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013).

an ALJ found Burton was not disabled and the Appeals Council affirmed, Burton filed an action for review.[3]  We adopted the report and recommendation of the magistrate judge, who found that the ALJ had failed to develop the record by obtaining medical expert opinion on whether Burton met or equaled the listings for intellectual disability. Accordingly, we remanded to the Commissioner to obtain a medical expert opinion.

In 2011, the same ALJ again determined that Burton was not disabled.  The Appeals Council affirmed.   After Burton filed a second action for review,[4] the Commissioner sought a remand to obtain a psychological evaluation and expert evidence on Burton's mental impairments, functional capacity and ability to work. Granting the motion, we again remanded.

In a September 26, 2014 decision, a different ALJ decided that Burton was not disabled.   The ALJ relied substantially on the testimony of a medical expert, who testified that Burton's IQ scores were not consistent with intellectual disability and he had no deficits in adaptive functioning sufficient to meet or equal Listings 12.05C or 112.05D.  Burton then filed this action.

### The Disability Tests

There are two different disability tests that apply—one for a child and the other for an adult.  When Burton filed his claim, he was ten years old.  He is now twenty-four.

To determine whether a child under eighteen is disabled, the Commissioner engages in a three-step sequential process.  To establish eligibility for benefits, the child must show: (1) he is not engaged in substantial gainful activity; (2) he has a medically

---

[3] *See Burton v. Astrue*, No. 08-4664 (E.D. Pa. filed Sept. 26, 2008).

[4] *See Burton v. Astrue*, No. 11-7213 (E.D. Pa. filed Nov. 18, 2011).

determinable physical or mental impairment that is "severe" within the meaning of the regulations; and, (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in the regulations.  20 C.F.R. § 416.924; *see also Morrison ex rel. Morrison v. Comm'r*, 268 F. App'x 186, 187 (3d Cir. 2008).  If he has an impairment that meets, medically equals, or functionally equals the listed impairments, the child is deemed disabled.

It is the third step that is at issue.  The ALJ found that Burton was not engaged in substantial gainful activity and he had a severe mental impairment.  At the third step, he concluded that Burton's impairment did not meet, medically equal, or functionally equal in severity any of the listed impairments.  20 C.F.R. § 416.924.

The inquiry at the third step requires the Commissioner to compare medical evidence to corresponding medical criteria for the listed impairment.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.  If the impairment does not meet or equal a listed impairment, the claimant must show that it is functionally equal to a listed impairment.  *Id.* § 416.926a(a).  To meet his burden, the child must demonstrate that he suffers from an impairment that causes "marked" limitations in at least two domains of functioning or an "extreme" limitation in at least one domain of functioning.  If he does, the child is considered to have an impairment functionally equal in severity to a listed impairment, rendering him disabled.  *Id.* § 416.926a(d).

The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being.  *Id.* § 416.926a(b)(1).  A "marked" limitation "interferes seriously" with a child's

3

"ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A marked limitation "also means a limitation that is more than moderate but less than extreme." *Id.* (internal quotation marks omitted). An "extreme" limitation "interferes very seriously" with a child's "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An extreme limitation is "a limitation that is more than marked." *Id.* (internal quotation marks omitted).

Once Burton turned eighteen years old, a different test applied. *Id.* § 416.924(f). Instead of the three-step process applicable to children, a five-step sequential process governs the inquiry to determine whether an adult is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920. The first two steps are the same as the child test. *Compare* 20 C.F.R. §§ 416.920(a)(4)(i), (ii) *with id.* §§ 416.924(b), (c). The third step is different. Unlike the test for a child, the adult test does not apply a functional equivalence measurement. The claimant must show that his impairment meets or equals a listed impairment. A functionally equivalent impairment does not qualify. *See Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014); 20 C.F.R. § 416.920(a)(4)(iii). If he has an impairment meeting or equaling a listed impairment, the claimant is considered *per se* disabled, ending the inquiry. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); 20 C.F.R. § 416.920(d). If the impairment does not meet or equal a listed impairment, the inquiry proceeds to a fourth step. *See Sullivan v. Zebley*, 493 U.S. 521, 534–37 (1990) (concluding that previous Social Security regulations did not provide children a comparable opportunity to adult step four). At step four, the claimant must show that the impairment prevents the performance of his past relevant work. *Zirnsak*, 777 F.3d at 611; 20 C.F.R. § 416.920(a)(4)(iv). Once the claimant

establishes that he cannot return to his customary occupation, the burden shifts to the Commissioner, who, at the fifth step, must prove that the claimant can still engage in substantial gainful activity. *Zirnsak*, 777 F.3d at 612; 20 C.F.R. § 416.920(a)(4)(v). The Commissioner satisfies this burden by demonstrating that given the claimant's age, education and work experience, he can perform specific jobs that exist in the national economy. *Zirnsak*, 777 F.3d at 612 (quoting 20 C.F.R. § 404.1560); *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984).

Burton argues the ALJ erred at step three of both the child and the adult tests. At step two, the ALJ found that Burton had a severe impairment, a learning disability.[5] He also found that, before and after age 18, Burton had depression and attention deficit hyperactivity disorder (ADHD), which he characterized as nonsevere impairments.[6] At the same time, the ALJ determined that these impairments "cause more than minimal functional limitations."[7]

At step three, the ALJ found that Burton's learning disability, even when combined with his depression and ADHD, did not meet, medically equal, or functionally equal a listing for child benefits; or meet or medically equal a listing for adult benefits.[8] To match a listing, the claimant must show that he meets or exceeds all of the criteria for the listed impairment. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (quoting *Zebley*, 493 U.S. at 531). Burton asserts that he has a severe impairment—an intellectual disability, in addition to a learning disability—which meets, medically equals,

---

[5] R. 1095, 1100.

[6] R. 1095, 1100.

[7] R. 1095.

[8] R. 1095, 1100–01.

or functionally equals Listings 112.05D and 12.05C for child benefits and meets or

medically equals Listing 12.05C for adult benefits.[9]

Listings 12.05C and 112.05D are the listings applicable to intellectual disability.

They provide in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]
>
> _____
>
> 112.05 Intellectual Disability: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
> . . .
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function . . . .

*Id.* pt. 404, subpt. P, app. 1.

In summary, Burton must show: (1) deficits in adaptive functioning—his

performance of various activities of daily living notwithstanding his impairments—prior to

age 22; (2) a valid verbal, performance, or full-scale IQ score between 60 and 70; and

---

[9] Listing 112.05D appears in Part B of the listings, which applies only to children under age eighteen.  A child may be evaluated using the criteria for either the adult or child listings.  However, an adult may be evaluated only using criteria for adult listings.  *See* 20 C.F.R. § 416.925(b)(2)(i).

(3) an additional severe impairment imposing significant work-related limitations. *See Gist v. Barnhart*, 67 F. App'x 78, 81–82 & n.2 (3d Cir. 2003); *see also Markle v. Barnhart*, 324 F.3d 182, 188–89 (3d Cir. 2003).

### The ALJ's Decision

The ALJ concluded that Burton's impairments did not meet or exceed the criteria for Listings 12.05C and 112.05D as either a child or an adult.[10]  Relying on medical expert Dr. Jerry Cottone's opinion, the ALJ concluded that Burton exhibited "no delays in adaptive functioning,"[11] an element of an intellectual disability necessary to meet Listings 12.05C and 112.05D.  In discussing his analysis of each of the six domains of functioning, the ALJ laid out the relevant regulations applicable to each.  Then, he made conclusory statements without an analysis of Burton's functioning in those domains.[12] For the period when Burton was a child, the ALJ found that he had a marked limitation in acquiring and using information; had a less than marked limitation in attending and completing tasks; and, was not markedly limited in other functional domains.[13]  But, he characterized his own finding that Burton had a marked limitation in acquiring and using information as "equivocal secondary to the opinion of the medical expert, Dr. Cottone, that [Burton] has a learning disability and not mental retardation."[14]

The ALJ rationalized that Cottone's opinion was supported by a consulting psychologist's conclusion that intellectual disability had been ruled out.  The consultant,

---

[10] R. 1095, 1100.

[11] R. 1101; *see also* R. 1097–1100.

[12] R. 1095–1100.

[13] R. 1098.

[14] R. 1097.

Dr. Brown, "provisionally diagnosed rule out mild mental retardation."[15]  Apparently, the ALJ elevated a provisional diagnosis to a final diagnosis.[16]

Brown did not definitively conclude that Burton did not have an intellectual disability.  Brown reported that Burton's "intellectual functioning was assessed as falling in the mild mental retardation range.  However, he does not *appear* to have deficits in adaptive functioning sufficient to meet criteria for a diagnosis of mild mental retardation."[17]   Thus, the ALJ erroneously used Brown's statements to bolster Dr. Cottone's opinion.

For the period when Burton was an adult, the ALJ also relied on Cottone's opinion.  With respect to adaptive functioning, he again found that Burton had some, but less than marked, limitation in acquiring and using information, and was not markedly limited in other functional domains.[18]   With respect to IQ scores, the ALJ relied upon Cottone's finding that Burton's full-scale IQ scores were scattered, even though Cottone had ignored his subscores.[19]   The ALJ concluded that Cottone "states strongly his opinion that his *best estimate* of the claimant's IQ score is in the range of 70–73 and his

---

[15] R. 1096.

[16] It is unclear whether Brown provisionally excluded mental retardation or actually called for future evaluation to rule it out.  *See, e.g.*, *Schwartz v. Colvin*, Civ. No. 12-1070, 2014 WL 257845, at *5 n.16 (M.D. Pa. Jan. 23, 2014); *Vargas v. Colvin*, Civ. No. 12-1215, 2014 WL 250346, at *8 n.25 (M.D. Pa. Jan. 21, 2014); *Button v. Colvin*, Civ. No. 12-866, 2013 WL 6805069, at *8 n.23 (M.D. Pa. Dec. 20, 2013); *Lovell v. Colvin*, Civ. No. 12-281, 2013 WL 4079648, at *5 n.14 (M.D. Pa. Aug. 13, 2013); *Kuhn v. Astrue*, Civ. No. 10-2614, 2012 WL 258725, at *9 n.34 (M.D. Pa. Jan. 27, 2012) ("The 'rule-out' diagnosis is used inconsistently by different physicians and psychologists and the context in which the 'rule-out' diagnosis is made has to be closely scrutinized. The 'rule-out' diagnosis can have two different meanings. It can mean that the particular condition is, in fact, ruled out, i.e., the patient is not suffering from the condition. However, it also can mean that further information is needed to evaluate whether the patient is, in fact, suffering from the condition.").

[17] R. 1128 (emphasis added).

[18] R. 1101.

[19] R. 1102.

diagnosis is a learning disability, not an intellectual disability."[20]  In short, the ALJ based his conclusion on Cottone's "estimate" of what the IQ scores were and not what the actual numbers were.

## Analysis of the ALJ's Decision

In reviewing the ALJ's findings of fact, we apply the deferential "substantial evidence" standard.  42 U.S.C. § 405(g); *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999).  We must affirm the ALJ so long as his conclusions are supported by substantial evidence.  *Craigie v. Bowen*, 835 F.2d 56, 57 (3d Cir. 1987).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  *Id.*  We review the record as a whole to determine whether substantial evidence supports a factual finding.  *Schaudeck*, 181 F.3d at 431.  When doing so, we may not substitute our own judgment for that of the fact finder.  *Rutherford*, 399 F.3d at 552.

The ALJ's decision rises or falls on Cottone's opinion.  Cottone's conclusions were based on a misunderstanding and misapplication of the Social Security regulations.  First, he ignored Burton's below-70 IQ scores, which qualify for intellectual disability under 12.05C and 112.05D, while relying on references to a learning disability in school records.  Second, he erroneously imposed a higher burden upon Burton to show deficits in adaptive functioning by requiring him to establish "significant delays in adaptive functioning," though the listings require only "deficits in adaptive functioning."

---

[20] R. 1102 (emphasis added).

Cottone considered only Burton's full-scale IQ test scores. However, Listings 12.05C and 112.05D require either a verbal, performance, or full-scale IQ score between 60 and 70.  20 C.F.R. pt. 404, subpt. P, app. 1.  The listings do not require a full-scale IQ score below 70.  A verbal or performance subscore below 70 satisfies the requirement.  *See Williams*, 970 F.2d at 1184 ("Since the different types of IQ tests are separated by a disjunctive, the Secretary's position that a valid verbal score by itself cannot be acceptable is incorrect.").

Only the first IQ test administered in 2004, a WISC-III test, which later turned out to be unreliable, showed all three scores above 70.[21]   Another WISC-III test, administered two years later, showed a full-scale IQ score of 69.[22]  Cottone acknowledged that the WISC-III test was outdated when it was administered. Nevertheless, he relied on those test results, explaining that he was "just pulling out, you know, all of the IQ scores I could find."[23]  Later WISC-IV and WAIS-IV tests showed a verbal comprehension index of 69 in 2007,[24] a perceptual reasoning index of 69 in 2011,[25] and a perceptual reasoning index of 65 and a full-scale IQ of 69 in 2012.[26]

Despite the IQ test results below 70, a requirement for a finding of intellectual disability, Cottone instead relied on school records that noted a learning disability.  In other words, he disregarded Burton's below-70 test results and cited school records

---

[21] R. 155.

[22] R. 1036.

[23] R. 1243, 1731.

[24] R. 945.

[25] R. 1290.

[26] R. 1298.

without explaining the basis for the school's designation of a learning disability.  There is no evidence that the school ever had a classification of intellectual disability or distinguished between the two disabilities.

Cottone opined that Burton had a "pretty significant" learning disability.  He declined to opine whether he also had an intellectual disability in addition to the learning disability.  He testified, "Certainly, we have some IQ scores or performance scores that hit just below the 70 score threshold.  But he's been diagnosed with a learning disability throughout his school career.  So, I would be inclined to accept that diagnosis."[27]

Cottone did not consider whether Burton's impairments, medically or functionally, equaled the listings for intellectual disability.  *See* 20 C.F.R. § 416.926(c); *Zirnsak*, 777 F.3d at 611.  He declined to opine whether Burton's deficits in adaptive functioning equaled an intellectual disability.  He testified that Burton had "no significant delays in adaptive functioning," suggesting that he found delays that were not, in his opinion, significant.  The listings do not require "significant" deficits.  *See Gist*, 67 F. App'x at 81–82.  At the same time, he admitted that Burton had a marked limitation in acquiring and using information.[28]  He also conceded other deficits in adaptive functioning, like academic and self-direction skills.[29]  When asked whether Burton's deficits were equivalent to Listing 12.05, Cottone concluded, "I guess I'm a little unsure about it.  My understanding of 12.05 is that it was for an intellectual disability, not a learning disorder or learning disability."[30]  This response reflects that he did not even consider the

---

[27] R. 1189.

[28] R. 1189, 1191.

[29] R. 1234, 1236–37.

[30] R. 1240.

requirements for an intellectual disability because he had predetermined that Burton had only a learning disability based on school records rather than expert opinion.

Cottone testified that he did not have "enough evidence in the record to just be an intellectual disability or mild mental retardation, it's a learning disability."[31]  Cottone concluded that Burton's learning disability did not meet Listings 12.05C and 112.05D, based on IQ test scores and the absence of details in Burton's school records regarding his functioning or targeted programming.[32]

Yet, Cottone admitted that Burton exhibited deficits in adaptive functioning and subaverage intellectual functioning with valid IQ subscores between 60 and 70.[33]  He did not reconcile the IQ scores with his opinion that Burton does not have an intellectual disability.  Nor did the ALJ.

Given the inconsistencies in Cottone's equivocal testimony, the ALJ's conclusion founded on that testimony is not supported by substantial evidence.  On the other hand, there is substantial evidence of disability.  Two medical experts, Hillel Raclaw, who testified at the second hearing in 2011, and Craig Weiss, who authored a 2014 report, concluded that Burton was intellectually disabled pursuant to Listings 12.05C and 112.05D.  Although Raclaw's testimony is part of the administrative record, the ALJ never mentions it.

The ALJ also credited Cottone's opinion over Weiss's opinion.  Saying only that Weiss's opinion was "conclusory, summarily stated, and seemingly superficial," he

---

[31] R. 1193.

[32] R. 1248.

[33] R. 1234, 1236–37.

dismissed his opinions without any meaningful analysis.[34]

An ALJ must explicitly weigh all relevant and available evidence.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).  When he rejects evidence, he must explain his reasons.  *Id.*  The ALJ did not offer a sufficient fact-based reason for favoring Cottone's opinion over Weiss's and Raclaw's opinions.

Raclaw noted that Burton's academic performance, which was consistently at half his grade level, was subaverage intellectual functioning.[35]  Weiss reported that Burton, at seventeen years of age, was in the ninth grade, three grades behind others his age.[36]  He also opined that, in spite of individualized education programs that were implemented for Burton and allowed him to make relative progress, his grade-level reading and math abilities were only 5.7 and 4.7 grade levels, respectively.[37]  Both Raclaw and Weiss reviewed a battery of IQ tests performed between 2004 and 2007, which consistently demonstrated at least one verbal, performance, or full-scale IQ score of 69 or less.[38]

With respect to the one test which showed all three scores above 70, Raclaw testified that the WISC-III test was "outdated" and "never should have been used" and likely inflated Burton's scores by three to seven points.[39]  Weiss agreed that the WISC-

---

[34] R. 1101.

[35] R. 1078–80.

[36] R. 1170.

[37] R. 1171.

[38] R. 1078–80, 1170.

[39] R. 1078–79.  R. 1243.

III test inflated Burton's full-scale IQ scores.[40]

In sum, Burton has undergone five rounds of IQ testing. Each of the last four tests show at least one subscore below 70. Thus, there is substantial evidence in the administrative record that Burton meets the IQ criteria for Listings 12.05C and 112.05D.

With respect to adaptive functioning, both Raclaw and Weiss determined that Burton's activities of daily living were compromised.[41] Weiss found that Burton had deficits in adaptive functioning in social and interpersonal skills, self-direction, functional academic skills, and home living.[42] Weiss reported that Burton was not getting along with his teachers or his siblings, and was not completing household chores.[43] He concluded that Burton had made "poor progress in acquiring mental, academic, social and personal skills," and was "unable to cope with the challenges of ordinary everyday life."[44] In addition, Raclaw opined that Burton needed a representative payee.[45]

Raclaw and Weiss also found that Burton had an additional severe impairment meeting the intellectual disability listing. Finding Burton's ADHD a "severe problem," Raclaw concluded, "I think he meets 12.05C as an adult or as a child."[46] Weiss similarly noted the problems Burton faced as a result of his ADHD.[47] He too concluded, "In summary, my opinion, within a reasonable degree of psychological certainty, is Tristan

---

[40] R. 1170.

[41] R. 1080–83, 1171.

[42] R. 1171–72.

[43] R. 1171.

[44] R. 1170.

[45] R. 1081.

[46] R. 1080–81.

[47] R. 1171.

Burton meets the required Social Security listings of 112.05D and 12.05C."[48]

Based on the record, the Commissioner's decision that Burton is not disabled is not supported by substantial evidence. On the contrary, evidence shows that Burton meets the requirements of Listings 12.05C and 112.05D. Therefore, we conclude that there is substantial evidence that he was disabled as a child and is disabled as an adult.

### The Remedy

Under the fourth sentence of 42 U.S.C. § 405(g), we may enter judgment affirming, modifying or reversing the decision with or without remanding the matter for a rehearing. We may decline to remand a case if it will result in considerable delay caused by deficiencies in the record that are not attributable to the claimant. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *Podedworny*, 745 F.2d at 233. We may also decline to remand a case where the record contains substantial evidence of disability and is unlikely to change. *Morales*, 225 F.3d at 320.

The deficiencies in the record are not attributable to Burton. To the contrary, despite having had three opportunities to decide the claim, the Commissioner has failed to make a decision. The Commissioner has twice sought a remand after receiving unfavorable or inadequate expert testimony to counter or overcome testimony supporting Burton's disability claim.

Thirteen years to decide this case is much too long. Burton is entitled to a decision. Thus, we shall avoid further delay by ruling on his claim.

The Commissioner admits that there is no substantial evidence to support the ALJ's most recent decision. On the other hand, there is substantial evidence that

---

[48] R. 1172.

Burton is disabled.  Therefore, we shall deny the Commissioner's motion for remand to take additional evidence and instead remand for the calculation of benefits.

 /s/ Timothy J. Savage
TIMOTHY J. SAVAGE,  J.